**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CIVIL ACTION NO. 08-286-JBC**

**TERRY LEE MULLINS,**                                                                    **PLAINTIFF,**

**V.**                                       **MEMORANDUM OPINION AND ORDER**

**JOHN MARSHALL, ET AL.,**                                                    **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on Defendant John Marshall, Jeff Noble,

Clyde Caudill and Thomas Miller's motion for summary judgment.  R. 44.  The court

will grant the motion as to Noble, Caudill, and Miller; deny it as to Marshall; and

direct Marshall to file a second motion for summary judgment in accordance with

this opinion.

**I.     Background[1]**

The plaintiff, Terry Mullins, filed this civil rights action against: (1) the City of

Jackson, Kentucky; (2) the Jackson Police Department; (3) Jackson Police Officer

John Marshall; (4) Jackson Police Chief Cylde Caudill; (5) Jackson Police Officer

Jeff Noble; (6) Jackson Police Officer Thomas Miller; and (7) Kentucky State Police

---

[1]The court here states the plaintiff's recitation of the facts, as it must.
*Cooper v. Parrish*, 203 F.3d 937, 934 (6th Cir. 2000) (noting that a court must
construe the complaint in the light most favorable to the plaintiff and accept as true
all well-pleaded factual allegations).

Officer Scott Sandlin.  Two months later, the court dismissed the claims against all defendants except Marshall and Miller.  R. 6.  Mullins then filed his third amended complaint (R.33), which included new allegations of personal involvement by Caudill and Noble as well as claims against Oman Sandlin.

Mullins alleges the following underlying facts.  In the week before January 28, 2008, Mullins called the Jackson Police Department and reported to Sgt. Jeff Noble that a man named Christopher J. Crank had stolen his .38 caliber handgun and that Crank had threatened to shoot Mullins.  R. 10.  On or about January 23, 2008, at Mullins's request,  Leonard Noble, the former Mayor of Jackson who allegedly sold Mullins the gun, called Officer Thomas Miller and told him that Christopher Crank had stolen Mullins's firearm and had threatened Mullins with it.  R. 2.  Mullins has information indicating that at some point, Chief Clyde Caudill stated something to the effect of "I've heard enough about that gun" in regard to Mullins's concerns.  R.10.  The police did not attempt to recover the gun or to otherwise protect Mullins.

On January 24, 2008, Mullins pulled up beside Officer John Marshall's vehicle, which was parked in the parking lot of the White Flash restaurant.  R. 2, 49.  At this point Crank entered the parking lot in a car driven by Treva McIntosh, who proceeded to block Mullins's vehicle with her vehicle; Crank then pointed a gun at Mullins.  R. 49.  Mullins rammed his car into Crank's, exited his vehicle, and climbed into the back seat of Crank's car, where the two men fought.  *Id.*  Seeing

the fight, Marshall approached and pulled Mullins off Crank.  Crank then shot

Mullins with the .38 caliber handgun.  R. 49.  Mullins sustained a gunshot wound

and will need medical attention for the rest of his life.  *Id.*

## II.   Analysis

Because the plaintiff, Terry Mullins, is proceeding pro se, his pleadings and

filings are liberally construed.  *See Farah v. Wellington*, No. 07-3476/07-3477,

2008 U.S. App. LEXIS 21166 at *13 (6th Cir. Sept. 28, 2008).  The court

therefore construes Mullins's third amended complaint as a § 1983 action for

violations of his constitutional rights and as alleging that defendants violated the

Universal Declaration of Human Rights.

### A.  Section 1983 Claims

Section 1983 provides a federal cause of action for the deprivation of "any

rights, privileges or immunities secured by the Constitution and law."  42 U.S.C. §

1983.  Defendants in § 1983 lawsuits are entitled to summary judgment based on

qualified immunity unless the facts alleged and the evidence produced, when

viewed in a light most favorable to the plaintiff, shows that (1) the defendant

violated a constitutional right and (2) the right was clearly established, meaning

that a reasonable official would understand that his actions violate that right.[2]

_____

[2]Qualified immunity shields government officials performing discretionary
functions from "liability for civil damages insofar as their conduct does not violate
clearly established statutory or constitutional rights of which a reasonable person
would have known."  *Morrison v. Bd. of Trs. of Green Township*, No. 08-3051,
2009 U.S. App. LEXIS 22159 at *10 (6th Cir. 2009) (quoting *Harlow v. Fitzgerald*,
457 U.S. 800, 818 (1982)).

3

Plaintiff's § 1983 claims fall into two categories: that Noble, Miller, and Caudill failed to investigate his claims that Crank stole his gun and had threatened him and that Marshall negligently restrained him, thereby making it easier for Crank to shoot him.

### 1.    Failure to Investigate

Mullins fails to show that Miller, Noble or Caudill violated any of his constitutional rights by allegedly failing to take actions that would have protected him from third-party harm.  In general, the Due Process Clause does not impose affirmative obligations on the state to protect the interests of individuals. *Deshaney v. Winnegbago County Dep't of Social Servs.,* 489 U.S. 189, 198 (1987).  Two exceptions to this general rule exist: where there is a special relationship creating an obligation to protect and where there is a state-created danger.

The "special-relationship exception" applies when the state restrains an individual so as to expose the individual to harm.  *Id.* at 428.  No special relationship existed between Mullins and Noble, Miller, or Caudill.  Under Kentucky law, the existence of a special relationship is determined by applying a two-part test: (1) the victim must have been in state custody or otherwise restrained by the state at the time of the incident and (2) the violence or other offensive conduct must have been perpetrated by a state actor.  *See Fryman v. Harrison*, 896 S.W.2d 908, 910 (Ky. 1995).  That the defendants may have known about the alleged

4

theft of Mullins's gun and/or threatening statements by Crank to Mullins does not constitute the existence of a "special relationship" between Mullins and any of the defendants.  Here, Mullins does not allege that he was in state custody at the time of the shooting or that any of these defendants committed acts of violence against him.  Thus the special-relationship exception does not apply, and Noble, Miller and Caudill were not legally obligated to protect the plaintiff from third-party acts of violence.

The second exception, known as the "state-created danger" exception, occurs when the state places the individual in danger through some affirmative conduct.  *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998).  The state-created-danger doctrine has three requirements: (1) an affirmative act by the state that creates or increases the risk that an individual will be exposed to private acts of violence; (2) special danger to the victims as opposed to the public at large; and (3) the requisite degree of state culpability.  The doctrine is inapplicable here because Mullins's allegations are based on omissions as opposed to affirmative acts by the defendants.  *See Jones v. Union County, Tenn.*, 296 F.3d 417, 430 (6th Cir. 2002) (discussing cases holding that liability under the state-created-danger theory must be predicated on affirmative acts) (citations omitted).  In other words, Mullins does not accuse Miller, Noble, or Caudill of committing an affirmative act that created a danger; rather, his claims are based on a failure to act with respect to an existing danger.  The state-created-danger

exception therefore does not apply to Mullins's claims against Miller, Noble, or Caudill.

### 2.   Supervisor Liability

In addition to failing to establish grounds for liability for Caudill individually, Mullins also lacks a basis for supervisor liability.  In order to hold a supervisor liable under § 1983, a plaintiff must allege that the supervisor condoned, encouraged, or participated in the alleged misconduct.  *Searcy v. Dayton*, 38 F.3d 282, 287 (6th Cir. 1994) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1994)). Because Mullins fails to establish underlying misconduct by Miller and Noble, any claim for supervisor liability against Caudill fails as well.

### 3.   Physical Restraint by Defendant Marshall

Mullins argues that Marshall violated his constitutional rights by physically restraining him, which in turn made it easier for Crank to shoot him.  When the conduct of which a plaintiff complains is committed by an officer in the usual course of "a law enforcement official's arrest, investigatory stop, or other seizure," that conduct is evaluated under the Fourth Amendment.  *Estate of Leslie George v. State of Mich.*, No. 01-1613, 2003 U.S. App. LEXIS 7949, at *12 (6th Cir. April 23, 2003) (citation omitted); *see also Halsell v. Etter*, No. 05-477, 2006 U.S. App. LEXIS 31216 at *10-11 (6th Cir. Dec. 15, 2006).  Marshall's act of pulling Mullins off Crank constituted a seizure for Fourth Amendment purposes.  *See Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989) (explaining that "a governmental

6

termination of movement *through means intentionally applied*" triggers Fourth Amendment protections) (emphasis in original); *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968) (noting that a seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen").  The parties have argued the § 1983 claim against Marshall under the Fourteenth Amendment.  Because a seizure is involved, however, the proper analysis under the Fourth Amendment.  The court will thus deny Marshall's motion but will direct him to file a second potentially dispositive motion using a Fourth Amendment analysis.

> **B.     Universal Declaration of Human Rights**

Mullins's claims under the Universal Declaration of Human Rights (UDHR) fail as a matter of law.  The UDHR is not a treaty or international agreement that imposes legal obligations on the United States.  Rather, it is a statement of principles aimed at providing a common standard for international human rights.  *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 734-35 (2004).  Because it is not enforceable in American courts, the UDHR claims will be dismissed.

**III.   Conclusion**

Accordingly, it is **ORDERED** that the motion of Noble, Caudill and Miller (R. 44) is **GRANTED.**  Mullins's § 1983 claims against Miller, Noble, and Caudill, as well as his claims under the UDHR, are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Defendant Marshall's motion (R. 44) is **DENIED.**  He shall file a second motion for summary judgment using a Fourth

Amendment analysis within 15 days of the entry of this order.  Response and reply times will run according to the Joint Local Rules of the Eastern and Western Districts of Kentucky.

Signed on  November 12, 2009

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY