**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

**CIVIL ACTION NO. 08-286-JBC**

**TERRY LEE MULLINS,**                                                                        **PLAINTIFF,**

**V.**                     **MEMORANDUM OPINION AND ORDER**

**JOHN MARSHALL, ET AL.,**                                               **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the motion for summary judgment by the remaining Defendant, John Marshall. For the reasons below, the court will grant the motion.

**I.    Background[1]**

In the week prior to January 24, 2008, Terry Lee Mullins called the Jackson Police Department and reported that a man named Christopher J. Crank had stolen his .38 caliber handgun and had threatened to shoot Mullins. R. 10 at 2-3. On January 24, 2008, Mullins pulled up beside Officer John Marshall's vehicle, which was parked in the parking lot of the White Flash restaurant. R. 2 at 2-3; R. 49 at 38. Shortly thereafter, Crank entered the parking lot in a car driven by Treva McIntosh, Mullins's ex-girlfriend. R. 49 at 39. McIntosh blocked Mullins's vehicle

---

[1] The court construes the facts in the light most favorable to the non-moving party, Mullins. In addition, because the plaintiff is proceeding pro se, his pleadings and filings are liberally construed. *See Farah v. Wellington*, No. 07-3476/07-3477, 2008 U.S. App. LEXIS 21166, at *13 (6th Cir. Sept. 28, 2008).

with her own, and Crank pointed a gun at Mullins. *Id.* at 40. Mullins rammed his car into Crank's, which caused Crank to drop the weapon. *Id.* at 41. Mullins exited his vehicle, climbed into the back seat of Crank's car, and proceeded to beat Crank in the head. *Id.* at 42. Marshall, who had been eating in the restaurant, came out and pulled Mullins off Crank. *Id.* at 44-45. As Marshall pulled Mullins off Crank, Crank was able to regain the gun, and shot Mullins. *Id.* at 44-45. Mullins sustained a gunshot wound and will need medical attention for the rest of his life. *Id.*; R. 2 at 3.

## II. Analysis

Section 1983 provides a federal cause of action for the deprivation of "any rights, privileges or immunities secured by the Constitution and law," including the Fourth Amendment. 42 U.S.C. § 1983. Marshall's restraint of Mullins constituted a "seizure" of his person. *See United States v. Halliburton*, No. 91-6268, 1992 U.S. App. LEXIS 37885, at *8 (6th Cir. June 19, 1992) (explaining that a seizure occurs if "a reasonable person would have believed that he was not free to leave.") (citation omitted). At issue in this case is whether Marshall violated Mullins's Fourth Amendment right against unreasonable seizure. *See* U.S. Const. amend. IV.

Mullins argues that this seizure was not reasonable because Marshall knew that Crank was armed, and therefore failed to appreciate that restraining Mullins would make it easier for Crank to shoot him. Although the parties dispute whether Mullins told Marshall that Crank was armed in the moments leading up to the

altercation, this does not create a genuine issue of material fact. During Mullins's deposition, he stated that as he was running toward McIntosh's vehicle, and as Marshall exited the White Flash, Mullins told Marshall that Crank had a gun. R. 49 at 43.[2] Mullins does not allege that Marshall actually heard this warning, however. In fact, Mullins's own testimony suggests that Marshall did not hear him. *Id.* (stating that Marshall "just acted like a dummy"). Marshall stated in his affidavit that "[a]t no time prior to hearing a gunshot was I aware that a gun was involved in the situation." R. 64, Attach. 1. Accordingly, even viewing the facts in the light most favorable to Mullins, the record supports Mullins's assertion that he warned Marshall that Crank was armed, but the record does not support the contention that Marshall heard that warning. *See Chappell v. City of Cleveland*, 585 F.3d 901, 914 (6th Cir. 2009) (noting that a discrepancy between the police and the witnesses' versions of events established only that the witnesses didn't hear the announcements, not that the police did not make them, and therefore did not raise a genuine issue of material fact).

In addition to his verbal warning, Mullins also alleges that Marshall had prior knowledge that Crank was armed. Specifically, Mullins alleges that he spoke to law enforcement officials in the weeks leading up to this incident regarding threats by Chris Crank, and that the officers must have told Marshall because they shared

---

[2] Although Marshall notes that a party cannot create a genuine issue of material fact by contradicting prior deposition testimony with an affidavit, that principle is not applicable here because the court does not accept this issue as a material factual dispute.

3

an office. R. 64 at 1-2. The record provides no support for this assumption, however, and it therefore fails to create a genuine issue of material fact regarding whether Marshall knew that Crank was armed.[3]

Turning to the legal question of whether Marshall's actions were reasonable, the court must assess the totality of the circumstances. *See Ohio v. Robinette*, 519 U.S. 33, 39 (1996). As in other Fourth Amendment contexts, the reasonableness of a seizure or of the application of force "must be judged from the perspective of reasonable officer on the scene, rather than with 20/20 vision of hindsight," and must take into account that police officers "are often forced to make split-second judgments . . . about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The applicable standard is objective, and requires determining whether the officer's actions were objectively reasonable "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

Marshall's conduct was objectively reasonable. Marshall saw Mullins ram his vehicle into McIntosh's, leap out of his car and into McIntosh's, and proceed to beat one of the passengers in that vehicle, Chris Crank, in the head. R.49 at 41-

---

[3]The record also indicates that Marshall did not see the gun prior to the shot being fired. Mullins alleges that Marshall's eyesight was deficient at the time of the incident. R. 2 at 4; R. 49 at 43. Regardless of Marshall's visual capabilities, the facts do not indicate that any person could have detected the presence of a gun from Marshall's vantage point. *See* R. 49 at 41-42 (noting that the gun had been knocked out of Crank's hand before Marshall approached the scene).

42. Marshall's use of force against a perceived aggressor like Mullins was reasonable. *See Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 486-87 (6th Cir. 2007) (noting that use of force was appropriate where defendant posed an immediate threat of serious physical harm to others). There is no support for Mullins's contention that Marshall was aware that Crank was armed and intended to harm Mullins. Thus, even viewed in a light most favorable to Mullins, the record would not permit any reasonable juror to conclude that Marshall's actions were unreasonable in light of the circumstances.

Even if a genuine issue of material fact remained regarding whether Marshall's actions were objectively reasonable, qualified immunity serves as an alternative basis for summary judgment. *See Wilkey v. Argo*, No. 01-5515, 2002 U.S. App. LEXIS 16559, at *14 (6th Cir. Aug. 12, 2002). Qualified immunity shields government officials performing discretionary functions from liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, the doctrine applies to instances of mistaken judgment by protecting "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1986) (citation omitted). Thus, even if a constitutional violation occurred, Marshall is entitled to qualified immunity because viewing the evidence in a light most favorable to him, Mullins has not shown either that a constitutional right was violated or that the right was clearly established. *See Chappell*, 583 F.3d

at 907.

### III.  Conclusion

Accordingly, Defendant John Marshall's motion for summary judgment, R. 63, is **GRANTED**.

Signed on  March 26, 2010

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY